Burns-Fisher v. Romero-Lehrer and Mr. Blanchard, when you're ready, we'll hear from you. Thank you, Your Honors, and may it please the Court, my name is Norwood Blanchard and I'm here on behalf of the appellant, Dr. Anna Romero-Lehrer. This case is a relatively straightforward qualified immunity case. The facts of the case are very sparse that you saw, it was very short joint appendix in this one because it is based on the denial of a qualified immunity motion brought at the pleading stage. As you know, qualified immunity is a right not to stand trial, a right not to go through the rigors of the litigation process, so it's best decided as early as possible. The facts of this case, as I stated, are actually relatively straightforward. Back in April of 2018, an incident occurred at Topsill Middle School in Pender County, North Carolina. An autistic child, middle school student, according to the complaint, had an outburst in the final class of the day. The plaintiff, Ms. Burns-Fisher, was the teacher of that class, an eighth grade teacher. The student allegedly threw a book bag and then assaulted the teacher when he became agitated. My client, Dr. Romero-Lehrer, was the principal of the school at that time, and according to the complaint, and I believe it's paragraph 15 of the complaint, the child identified as TB in the complaint was an autistic child who had an IEP, an individual education plan. Those are required by federal law. As we pointed out in our briefs, federal law also specifically requires that autistic children and other children with similar disabilities be educated and placed in what's called the restrictive environment. Just to give you a little background on that process, what happens is that a team meets and determines what the plan is for this child, and then children are placed in that. The plaintiff's allegations in this action are essentially that the teaching assistant didn't show up that day for class, and my client, the principal, nevertheless required the class to go forward, and this is what she claims, what the plaintiff claims, was violation of her due process rights under the state-created danger theory. When we moved for qualified immunity in this one, and the court, again, I know you've seen it hundreds of times, the qualified immunity process, there's two prongs to the defense of qualified immunity. The first question is, do the facts as alleged establish a violation of the plaintiff's constitutional rights? And then the second prong is, if the plaintiff prevails on the first one, was the law clearly established in a concrete and particularized manner at the time? Qualified immunity is denied only if the defendant loses on both of those prongs. Now in this instance, in this case, we believe that the plaintiff loses on the first prong, and that it's not even a close call. The lead case in this, as we pointed out in our brief, the case that sets the background for due process claims by public employees who are challenging the safety of the workplace is the Collins case from the Supreme Court. It's a 1992 case, and one of the cases, I believe it's Witkowski, is an out-of-circuit case I pointed out in our opening brief. I want to say it's a Seventh Circuit case, maybe from 2006 or 2007, pointed out that since Collins, since Collins at that time, in the 15 years at that time, that panel had not been able to find a single case where a public employee had prevailed on a state-created danger theory. And I'll submit to you that in our briefing, one thing that should stand out to the court is that neither the plaintiff or my client has been able to find a case either. Not just from this circuit, but any circuit. So the case law that we do have on state-created danger claims by public employees, and we started with the Waveride case cited in our brief in 2008. It's a fire department worker that died in training, and the court found that's not a state-created danger. Judge Niemeyer, you were the author of the slaughter case in 2012. Again, it's another fire department case, a live burn exercise, a fire department trainee died and essentially claimed that by subjecting him to a hazardous workplace, his constitutional rights were violated. And I want to focus on the slaughter case for an important reason. Because slaughter... I hope it's not because I'm sitting on this panel. Well, that's certainly not one of the things that I ignore, but slaughter pointed out that the standard for these claims isn't just deliberate indifference. It's higher even than that. The claimant has to allege and prove that the public employer actually intended to harm them. And that holding was repeated in the Callahan case last year. That was a prison worker who was killed by an inmate, and Judge Richardson happened to be on that panel. Earlier this year, or last year, another case, Howe v. Correctional Enterprises, also cited in our brief, another prison case, repeated for the third time that the standard is an actual intent to harm. The plaintiff has to prove that. Now we pointed that out at the district court level, pointed out in our opening brief again here, and the plaintiff never addressed that argument. Never addressed that argument. That has not been alleged in the complaint. And I don't think consistent with Rule 11 they could. So Your Honor, again, all of the case law from this circuit has declined to find the right that the plaintiff is asking for. There has never been a published Fourth Circuit case finding a violation of rights under the State Created Danger theory for a public employee. So we believe that the case law is clear and that our client should prevail on the first prong, and I'll go ahead and ask you, even though we could win on either prong, and under Saussure's, well, actually under Pearson v. Callahan, as you're well aware, you've got the discretion to skip to the second prong of the qualified immunity argument and just decided on that. In the interest of judicial economy, because the school board's still left in this case, we'd ask that the court address and decide the first issue, whether there's a constitutional right at all. But if you decide for some reason to break with your prior holdings and find one here, it would create a circuit split because, as we pointed out in our brief, we can't find any case law supporting the plaintiff in the Fourth Circuit. Looking outside the Fourth Circuit, if we look at a concrete and particularized set of circumstances, one that's similar to this, we pointed out at the district court level cases from both the Seventh and the Sixth Circuits that both involved public school employees being assaulted by autistic children who had IEP plans, and in both of those cases, and they're both published opinions, they're the Jackson Prairie opinion and Jackson v. Indian Prairie School District and Hunt v. Sycamore Community School District. From the Sixth Circuit and Seventh Circuit, the last one, the Seventh Circuit, was 2011. But in both of those cases, those panels decided on the first prong of qualified immunity. They said no violation. So turning around to our qualified immunity precedent and asking, what would my client, that's the question, the relevant question for you, what would a reasonable official at the time see as the law on this? If my client were a Fourth Circuit judge, even, she would look around and see there's no case law from our circuit ever recognizing such a right, and published case law from two other circuits under the same set of circumstances saying the right doesn't exist. There is no way that that provides the type of clear notice that's required to strip qualified immunity. Now I would like to be able to explain to you how, and I'm getting down on my time here, Judge Debert, how the trial court erred in their analysis of this, but I can't because there wasn't any provided. As you saw in the joint appendix, the decision provided no rationale at all. It was just a simple denial. It's on page 32, just says the court's reviewed the plaintiff's complaints and the defendant's motions to dismiss under the governing standard. The court denies defendant's motions to dismiss, and then goes on to tell us that the magistrate judge is available for a settlement conference. Now one of the things that was frustrating about that was that my client's motion to dismiss was denied anyway, so we are here to try to resolve this one hopefully as quickly as possible. We don't believe that there's any possible reasonable view of the case law that would result in qualified immunity being denied, and in your discretion we would ask that you address the first question, the first prong, and hold that no such right existed. Thank you, Your Honor. Are there any questions? Thank you, Mr. Blanchard. Mr. Berger. Thank you, Your Honor. May it please the court, my name is Bruce Berger. I represent Ms. Kimberly Burns Fisher in this case. We would respectfully disagree with counsel on both points because we believe that this circuit in several cases, including most recently the Callahan case, prior to that the Doe versus Rosa, and prior to that the Pender case, clearly established that there is a constitutional protection for a state-created danger theory, under a state-created danger theory, and that there is a constitutional protection, due process protection, for a violation of a liberty interest for bodily integrity. The cases in this circuit have discussed that, cases in other circuits have discussed that, so we think with respect to counsel that that is clear, and what we think is really important is the... I guess his point is, I don't think he disputes that, I think his point is, have we ever found that a state-created danger was present to allow a case to go forward? I think... And we had some pretty difficult cases, you know, where they released somebody who was under a warrant for arrest and goes out, they released him and killed somebody, and I think we had that twice, and we had the Byrne cases, two of those, and all of these were alleged to be state-created dangers, and so do we have something that helps you in finding where one was actually found to exist? The one that I saw, Your Honor, it's an unpublished case, admittedly, but Fourth Circuit, Robinson v. Loy, which we do cite in our brief and mention, that, you know, and to your point, I think that the, you know, the sad part of these cases is the results are terrible. Somebody's badly injured and you're dealt with an injury. It is, you know, and I empathize with it. I mean, without reaching any formal thing, it looks like the teacher had, she was sort of left unprotected and they had policies in place and so forth, but I gather the underlying policy to try to guide these cases in the right channels is that the tort law should be able to take care of that and that we shouldn't constitutionalize every tort, and that I think is probably one of the strongest bases why the courts have been resistant to elevating torts into constitutional violations, because you do have a tort claim, don't you, Outstanding? We do in the state case, but can I address that, though, because I think that's an excellent point. What the case law is very clear on is exactly what you said, beginning with the City of And that's where I disagree with the intent. Let me, two points. One is there's a spectrum here between tort law, which I completely agree under the facts, if it was a simple negligence case, what the courts say clearly is there is no constitutional violation. On the other hand, what the courts say is if there is intent, then there is most likely a constitutional violation. Mr. Blanchard is correct. We have not alleged intent here because we haven't done discovery. Is there intent? Don't know. We don't have a smoking gun letter. We don't have a confession, those sorts of things. I truly doubt whether those things exist, but what we do have are actions that we believe and have alleged go beyond simple tort, which we've also alleged, by the way, in state court. Well beyond, although... Well, the tort law is not inadequate, is it? Don't you like tort law? Well, yeah, I do like tort law, but, so, you know, interestingly, in state court, we have also alleged a significantly stronger set of facts beyond simple negligence. That's really the point. And in this case, we've alleged deliberate indifference, which I believe under the law is sufficient in that spectrum between simple negligence and intent, number one. Secondly, I think this is also very... What's the case that suggests in a state-created danger case that deliberate indifference suffices? Yes. What case? What case is that? You know, I believe we cite that in the brief. I think there's a... I will try to locate this, locate that in my notes, but I believe that there is... Well, Lewis certainly says that in the spectrum between negligence and intent... Yeah, but Lewis didn't in the state-created danger case, right? No, it was not. Lewis? Now, what it said was that there was a spectrum that allows you the constitutional action, and I think if there's negligence, you don't have it. If there's intent, you do. And they were saying that there's a spectrum between there, and deliberate indifference would be part of that spectrum. But the question is whether it applies... I mean, but what Lewis says is sometimes that's going to be enough, and sometimes it's not, right? Right. Depending on the nature of the action. Oh, absolutely, which gets down to really my point at this stage of the litigation. I think the cases are clear on this too, that each case, because they are difficult cases, as Judge Niemeyer said, each case depends on the specific facts of the case. And what we have here, I would suggest to you, because we're dealing with a motion to dismiss and not summary judgment, like the cases that counsel cited, what we have here are facts that allege taken as true, which I think you have to do at this stage of the litigation, would give rise to something much greater than negligence, possibly intent. We have an alleged intent, because we don't know what's there, but it would be that spectrum on the spectrum closed, which would be deliberate indifference. What is the affirmative act that's alleged in your complaint? I'm sorry, just a second. What is the affirmative act that's alleged in your complaint? The affirmative act is that with all the knowledge of the prior actions of this child, with all the rules in place, with all the safety precautions in place, on that day, this teacher who had been specifically, who had been attacked by this child on previous occasions, called the principal and said, from the classroom, and said, so I think that the affirmative act is, principal shows up, sees that that is not the case, and says to the teacher, teach the class anyway. So she's instructed to teach the class, despite the knowledge, with this child in the class, with the prior attacks, without the safety rules in place, that I think that's the intentional act. But with respect to the danger, it's really a failure, as opposed to an affirmative act. I think the affirmative act is... The principal just didn't act on it and left. She didn't create the danger. She failed to act to protect. Well, the creating the danger, I would submit, is requiring the teacher to teach with that knowledge and with those rules in place. No, she had a pre-existing duty to teach. She was hired to teach. She was hired to teach and she had a pre-existing duty to teach, but she didn't have the duty to teach, necessarily, without those safety rules in place. Why isn't this just like Callahan, right? The argument in Callahan was, I'm a jailer, you've got all these rules, I need more people, you don't give them to me, you put me in the pod, and I get killed. Same basic story, right? It's just that the student is not as bad as the inmate. But otherwise... Well, except that in this case, what you have, I think you have two things. I think you have one is specific prior acts against this teacher that was not the case in Callahan. That goes to knowledge, but it doesn't establish an affirmative act. Well, the affirmative act here, again, I don't recall in Callahan that the corrections officer was told, you have to work this day, that she raised that issue that day, right? That just goes... Okay. I understand your argument. Right. So the affirmative act was telling her to do her job? Affirmative act was telling her to do her job in light of the knowledge of a potential danger and in light of the knowledge of no second teacher there. And when you add that in light of part onto your response, you get back into what Judge Niemeyer was saying. It sounds like reframing the issue into a failure to protect, rather than an affirmative act. Well, I think that to me, the failure to protect issue is much closer in the Callahan case than it is in this case. And I think the reason is, is the prior knowledge of the specific violent acts against this teacher and the prior knowledge of the fact that that day, the safety precautions were not in place, and the knowledge that that day, not a week before like in Callahan or several days where the inmate had suggested that he was violent. You have the immediacy of what occurred in the presence of numerous prior actions, and despite the teacher's concern, which was expressed that day, she was still told, you have to teach without these precautions in place. That's what I would suggest is the affirmative act. Okay. Sure. Can I add one other thing to that? Because I think it's also important. Unlike, you know, in one of, I can't remember which of the fire cases, there was a training case and I believe it was this court that said, you know, you could have just not gone to the training. You could have said, here you had a class full of students when the teacher was aware that there was no second teacher, a second teacher there is required. When the principal said, teach anyway, the teacher couldn't say, I'm out of here because you had a class full of students. She didn't have that voluntary aspect of not being able to carry out her job that day. Judge Niemeyer, I'm sorry. Yeah, no, I was just, I thought you were at an end, so. Oh, okay. You have time. All right. Well, so that's our essential question. I think that the cases are clear that you need to look at the specific facts of the case and the temporal nature, and I think that's why Callahan is in large part different. The temporal nature of the actions to the injury, and in this case they were immediate, like within, I don't know, 40 or 50 minutes. With all this prior knowledge, I think that's what makes this case stand out and why when you look at the facts of this case with this teacher and this child and what happened that day that we believe there is sufficient evidence alleged to go forward to at least discovery to see whether or not that intent is there and see what other factors there may be. We haven't had that opportunity in this case, and we believe the court should affirm, therefore, the district court's ruling and allow discovery to take place. Okay. Thank you. Thank you, Mr. Berger. Your Honor, may I? Mr. Patrick. Very briefly on rebuttal. The first point I'd like to make, and this addresses both Judge Thacker, your question, Judge Richardson, yours, I think it's vitally important to point out here that this is the cases for state-created danger deal with the private sector, just citizens filing these claims against government actors. In the public employment context, the argument that deliberate indifference is good enough is plainly contrary to your precedent and your recent precedent. Judge Richardson, you were on the Callahan panel. As you pointed out just last year, I'm looking at footnote five. In the context of voluntary public employment, to meet the arbitrariness requirement, the government employers only shock the conscience if they, quote, intend to harm, end quote, the employee. Now, that's a direct quote from the slaughter case, a published opinion that's binding precedent on this court. So I've pointed you to two binding decisions here that reject, in the public employment context, the idea that deliberate indifference is enough. And that's an important thing because we look at this. One of the reasons the standards are higher for public employees is because a lot of dangerous jobs are left to public employees. You've got U.S. Marshals here who theoretically would have to fend off people with guns. But there are all kinds of other jobs. The Collins case in the Supreme Court, the plaintiff was a sanitation worker who suffocated in a sewer. You think about it. School teachers, I've cited two of them already for you. Dealing with students with IEP plans that are, let's face it, prone to outbursts. They're unpredictable. That's why they have a professionally drawn IEP plan, like they did here. So there is a good policy reason for having that higher standard in the public employment context. To your question, Judge- Well, I think the higher standard should be fairly attributable to a constitutional claim. In other words, the Constitution does not intend to supplant the tort law. It's the tort law. You're right because it constitutionalizes the tort. And that's why we require that the tort law be committed to such a degree of depravity that it violates substantive due process. And even substantive due process is an area where the Supreme Court has put on the brakes. They just do not want to expand the Constitution. You're preaching to the choir, Your Honor. You're not here, we're not here to create a fond of tort law. The fact is that all of these points, there may be deliberate indifference. There may be a recklessness. There may be other types of things. But we do have a body of law that will address that. And hopefully, if there was a wrong committed, that the wrong will be redressed. And yes, and I was just, very briefly, I'm about to run out Judge Thacker in response to your question about the Affirmative Act. Failing to protect people from known dangers has consistently been held to not be an Affirmative Act. Strangely enough, there's an unpublished case, Fletcher v. Maryland Transit Admin, where neighborhood residents filed suit claiming that they were not protected from students, high school students, unruly high school students in the area. And the court, this court, found that, hey, those high school students were a pre-existing danger, not a state-created one. So that's your right. All of these cases, that's the one thing that's in common. Plaintiffs are coming in, trying to shoehorn what's essentially an allegation of failure to protect into an Affirmative Act. Because they know they have to do that to get into court. But here, all the case law, literally all of the case law goes in one direction, and it's in favor of the defendant. So thank you again, Your Honors. All right, thank you, Mr. Berger. We are going to forego coming down to shake hands with you. We'll do it the next time you come, I hope. But we're still under the protocols. But thank you for your arguments, and we'll stand adjourned. Thank you. Thank you.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Julius N. Richardson